IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

SHARON MINCEY, as Administratrix    *
of the Estate of TEVIN LEMAR PAGE   *
BLOUNT, Deceased; and NYKERIA       *
SNELL, as Natural Mother and Next   *
Friend of (TLS), the minor child    *
and Next of Kin of TEVIN LEMAR      *
PAGE BLOUNT, Deceased,              *
                                    *
    Plaintiffs,                    *
                                    *
    v.                             *   CV  321-022
                                    *
DEPUTY JESSE HALE HALL, in his      *
individual capacity; LAURENS COUNTY *
SHERIFF'S DEPARTMENT; SHERIFF LARRY *
DEAN, in his individual capacity; and *
DEPUTIES JOHN DOE 1-5, in their     *
individual capacities,              *
                                    *
    Defendants.                    *

O R D E R

Presently before the Court are motions for summary judgment: one filed by Defendants Laurens County Sheriff's Department ("LCSD") and Sheriff Larry Dean, and another filed by Defendant Deputy Jesse Hale Hall. This lawsuit arises out of Deputy Hall's use of deadly force resulting from a police car chase initiated in Laurens County, Georgia on March 15, 2019. Plaintiffs filed this lawsuit pursuant to 42 U.S.C. § 1983. Upon consideration of the record evidence, relevant law, and briefs of counsel, the motions for summary judgment are **GRANTED** for the reasons stated below.

I. FACTUAL BACKGROUND

At the outset, the Court notes that Defendants filed a joint statement of undisputed facts (doc. no. 46), to which Plaintiffs filed a "Responsive Concise Statement of Material Facts" (doc. no. 52). This responsive statement simply lists three independent assertions of fact by Plaintiffs. Thus, to the extent that Plaintiffs did not challenge Defendants' joint statement of undisputed facts, these facts are deemed admitted. Loc. R. 56.1, S.D. Ga. ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party."). The Court will therefore accept the facts contained in Defendants' joint statement of undisputed facts as true to the extent they are supported by the evidence, do not make credibility determinations, are not legal conclusions, and are not disputed by Plaintiffs' responsive statement.

The Court also notes that the police car chase was recorded by video submitted into evidence by Defendants. (See Video, Doc. No. 48.) Thus, to the extent any statement or testimony is contradicted by the video, the Court will accept the video depiction as definitive. See Scott v. Harris, 550 U.S. 372, 378-81 (2007) (announcing that a court should not rely upon a "visible fiction," *i.e.*, a version of events "utterly discredited" by a

videotape; rather, a court should view the facts "in the light depicted by the videotape"). In truth, between the verifiable facts set forth by Defendants and the video evidence, there are very few disputed facts in this case – and none that are material to the summary judgment issues.

On March 15, 2019, Deputy Hall and Deputy Matthew Surine of the LCSD were sitting in their marked patrol cars at the bottom of an off-ramp from Interstate 16 (Exit 58), observing traffic in connection to a license check.[1] Exit 58 is the exit for Highway 199. The license check was positioned on top of the Highway 199 overpass of I-16. (Jt. St. of Undisputed Facts ("JSUF"), Doc. No. 46, ¶¶ 12-13.)

Deputy Hall observed Tevin Lamar Page Blount, Plaintiffs' decedent, change lanes to get off the interstate, then leave the interstate to get on the off-ramp, and return back to the right lane of the interstate, all without using a signal to change lanes. (Id. ¶ 17.) In returning to the interstate from the off-ramp, decedent's vehicle crossed a solid line.[2] (Id. ¶ 19.)

---

[1] The license check was to check for driver's license, seatbelt use, registration and insurance. (JSUF ¶ 14.)

[2] It is difficult to discern these traffic violations on the video, but the video shows the decedent's vehicle did not travel a straight line in front of Deputy Hall like the other vehicles. Moreover, Plaintiffs do not dispute that the decedent committed the observed traffic violations.

Deputy Hall activated his blue lights and entered the interstate to initiate a traffic stop of the decedent. (Video at :17 - :29 mark.) Deputy Hall also radioed Deputy Surine to confirm that he also saw the traffic violations.[3] (JSUF ¶ 21.)

When Deputy Hall caught up with the decedent's vehicle, he pulled in behind it; at this point, all nearby vehicles were traveling in the left lane. (Video at :38 - :42 mark.) Even though Deputy Hall's blue lights were activated behind him, the decedent did not pull over. Deputy Hall then activated his siren. (Video at 1:01 mark.) Once the stop was initiated, Deputy Hall radioed to dispatch that he was going to stop the vehicle for traffic violations.[4] (JSUF ¶ 22.)

Even after the siren was activated, the decedent did not pull over. Instead, the decedent's vehicle sped up. (Video at 1:04 mark.) Deputy Hall also sped up, and in fact, attempted to get next to the passenger side of the decedent's vehicle to direct him to stop. (Video at 1:13-1:17 mark; JUSF ¶ 26.) At this point, the decedent entered the emergency lane on the left side of the interstate. (Video at 1:20.) The decedent continued to speed in

---

[3] There is no audio on the video until Deputy Hall pulled onto the interstate.

[4] The Court can hear Deputy Hall speak on several occasions during the chase but cannot discern his words. Plaintiffs do not dispute that Deputy Hall was in radio communication with dispatch during the chase.

4

the left emergency lane, passing three cars, while Deputy Hall pursued in the right lane of the interstate. (Video at 1:20-1:30 mark.) The decedent almost hit a car when he got back into the left lane. (Video at 1:29 mark; JSUF ¶ 27.) The decedent then pulled into the right lane in front of Deputy Hall. (Video at 1:31 mark.) The chase continued, with the decedent passing several vehicles, causing many of them to brake. (Video at 1:31 - 2:09 mark.) The decedent even passed a vehicle in the right emergency lane. (Video at 1:48 mark.) The decedent was traveling well above the posted speed limit of 70 miles per hour; in fact, he reached 120 miles per hour. (JSUF ¶ 27, 30.)

Deputy Hall radioed that the decedent was trying to evade him and was driving erratically. (Id. ¶¶ 23-24.) Also, during the pursuit, Deputy Hall observed what appeared to be bags being tossed out of both sides of the decedent's vehicle. (Id. ¶ 29.) Deputy Hall radioed about the tossed bags. (Id.) Deputy Hall could see three or four adults and no children in the decedent's vehicle. (Id. ¶ 25.)

There was a moderate amount of traffic on the highway, and it was dark. Deputy Hall believed that the decedent's erratic driving was a significant danger to the motoring public, including himself. Accordingly, Deputy Hall decided to execute a PIT maneuver.[5] (Id.

---

[5] A PIT maneuver is executed by placing a bumper on the quarter panel of the suspect vehicle and quarter turning, causing the

5

¶¶ 33-36.) Deputy Hall believed there was more traffic ahead and determined that he had the only opening to deploy the PIT maneuver, believing that if the pursuit continued there would likely to be a crash. (Id. ¶ 38.) Prior to executing the PIT maneuver, Deputy Hall announced by radio that he was going to do so. (Id. ¶ 40.) When Deputy Hall executed the PIT maneuver, contacting the decedent's vehicle, the vehicle rotated off the interstate and crashed in a tree-filled ditch. (Id. ¶ 41; Video at 2:19 mark.) Deputy Hall stopped, exited his vehicle, and ran down to assist. (JSUF ¶ 41.) The decedent had died in the crash.

Captain Brian Scarborough of the LCSD testified that the decision to use the PIT maneuver is in the discretion of the officer. (Id. ¶ 43.) Deputy Hall testified that he used all factors listed in the LCSD policy in exercising his discretion to use the PIT maneuver, including the condition of the road, visibility, traffic volume, pedestrian traffic, type of vehicle, and its occupants, and speed. (Id. ¶ 45.) According to Sheriff Larry Dean, Deputy Hall was in compliance with the pursuit policy at the time of the incident on March 15, 2019. (Id. ¶ 47.) Sheriff Dean further testified that Deputy Hall had gone through PIT maneuver training and was certified in the PIT maneuver, which included classroom time as well as on-the-road practice. (Dep. of

---

suspect vehicle to rotate and come to a stop. (Dep. of Jesse Hale Hall, Doc. No. 46-3, at 18.)

Larry Dean, Doc. No. 46-9, at 11, 28.)  Further, Deputy Hall had received yearly training in the PIT maneuver.  (Id. at 16-21; Hall Dep. at 14-16.)

On March 11, 2021, Plaintiffs filed the instant complaint under 42 U.S.C. § 1983 against Deputy Hall, the LCSD, and Sheriff Dean, alleging violations of the decedent's constitutional rights.  Plaintiffs also assert state law claims of assault and battery and negligence against Deputy Hall.  Defendants have moved for summary judgment as to all claims.  The Clerk gave Plaintiffs notice of the summary judgment motions and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default.  (Doc. Nos. 49 & 50.)  Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.  The motions are ripe for consideration.

## II.  SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The purpose of the summary judgment rule is to dispose of unsupported claims or defenses, which, as a matter of law, raise no genuine issues of material fact suitable for trial.  Celotex Corp. v.

Catrett, 477 U.S. 317, 322–24 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. Id. at 252; accord Gilliard v. Ga. Dep't of Corrs., 500 F. App'x 860, 863 (11th Cir. 2012) (per curiam). Additionally, the party opposing summary judgment "may not rest upon the mere allegations or denials in its pleadings. Rather, [his] responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). As required, this Court will view the record evidence "in the light most favorable to the [nonmovant]," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and will "draw all justifiable inferences in [Plaintiff's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*) (internal quotation marks omitted).

### III. LEGAL ANALYSIS

Section 1983 creates a private right of action for the deprivation of federal rights by persons acting under color of state law.[6] 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred . . . ." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

In their complaint, Plaintiffs allege that Deputy Hall violated the decedent's Fourth Amendment rights through his "deliberate and unreasonable use of excessive and deadly force."[7] (Compl., Doc. No. 1, ¶ 35 (Count Two).) They also name Deputy Hall in Count Five, which is a § 1983 claim based upon the policies of the LCSD. The sole allegation against Deputy Hall in Count Five, Paragraph 52, is duplicative of the allegations of constitutional deprivation appearing in Count Two. Accordingly, the only federal claim against Deputy Hall is the excessive force claim.

---

[6] Here, there is no dispute that Defendants were at all relevant times acting under color of state law.

[7] Plaintiffs impliedly concede, as they must, that their claim for excessive force during the course of an arrest falls under the Fourth Amendment's prohibition against unreasonable seizures, and not under the Eighth or Fourteenth Amendments as alleged in their complaint. See Crocker v. Beatty, 995 F.3d 1232, 1246 (11th Cir. 2021).

9

Plaintiffs allege Sheriff Dean promulgated, encouraged and tolerated a pattern, practice or custom under which his deputies were trained and authorized to intentionally execute the PIT maneuver to seize a fleeing driver in a manner that would result in unreasonable and deadly force. This pattern, practice, or custom amounted to deliberate indifference to the constitutional rights of fleeing drivers. (See Compl. ¶¶ 51-57 (Count Five).)

The claims against Deputy Hall and Sheriff Dean are brought against them in their individual capacities. Deputy Hall and Sheriff Dean both seek summary judgment, contending that they are entitled to qualified immunity on the federal claims. The Court will address qualified immunity below.

Plaintiffs have also named the LCSD in their federal claim of deliberate indifference, but this claim must be dismissed because a sheriff's department is not a legal entity subject to suit under § 1983. See, e.g., Lawal v. Fowler, 196 F. App'x 765, 768 (11th Cir. 2006) ("Because 'sheriff's departments and police departments are not usually considered legal entities subject to suit,' we see no error in the district court's decision that [the plaintiff] failed to state a claim against the Douglas County Sheriff's Department."), cited, inter alia, in (Defs. LCSD and Dean's Mot. for Summ. J., Doc. No. 47-1, at 3-4). Plaintiffs do not contest

the injury, show the officer's conduct violated a federal right." Id. at 655-56 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001) (alterations omitted)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." Id. at 656 (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002)). "Courts have discretion to decide the order in which to engage these two prongs . . . [b]ut under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Id. (citations omitted). In this case, Plaintiffs cannot establish a constitutional violation as a matter of law, and Plaintiffs have not shown that Deputy Hall violated clearly established law.

A claim of excessive force in effecting an arrest or seizure under the Fourth Amendment is governed by a "reasonableness" standard. Plumhoff v. Rickard, 572 U.S. 765, 774 (2014) (quoted sources omitted). In Graham v. Connor, 490 U.S. 386, 396 (1989), the United States Supreme Court explained that objective reasonableness "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment rights against the countervailing governmental interests at stake." In this case, Plaintiffs contend that no countervailing governmental interest exists to justify the use of *deadly* force. Plaintiffs continue that Deputy Hall should have simply terminated

12

the chase and, having his license plate number, apprehended the decedent at a later time.

First, Plaintiffs' contention that there was no governmental interest in terminating the chase by employing the PIT maneuver ignores the reckless behavior of the decedent in putting the motoring public, his passengers, and the pursuing officer at risk of serious harm.[8]  See Scott, 550 U.S. at 383-84 (finding that ensuring public safety from a fleeing driver was a paramount governmental interest when the driver poses an "actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase"). In fact, in weighing this governmental interest against the higher probability of injuring or killing a fleeing driver, the Supreme Court noted that it is the fleeing driver "who intentionally placed himself and the public in danger by unlawfully

---

[8] Plaintiffs' statement in brief that the decedent was speeding and driving erratically "but under control" (Pls.' Resp. in Opp'n, Doc. No. 51, at 10) is contradicted by the dashcam video.  The video shows the decedent recklessly pass thirteen cars, using the emergency lanes to do so, in less than one minute at an absurdly high rate of speed.  I suppose it could be said that the decedent was "under control" because until the point that Deputy Hall executed the PIT maneuver, he had managed to not hit anything or drive someone off the road.  But it could also be said that Deputy Hall's conduct prevented the decedent from causing another potentially fatal accident, which is the point of the reasonableness inquiry: was Deputy Hall's conduct reasonable? – in quickly terminating the immediate risk of harm to the motoring public, yes, it was reasonable.

13

engaging in the reckless, high-speed flight that ultimately produced the choice between the two evils [the police] confronted." Id. at 384.

Second, the Scott Court rejected the notion that a pursuing officer acts unreasonably if he could have simply stopped pursuing but did not. The Supreme Court explained:

> But wait, says respondent: couldn't the innocent public equally have been protected, and the tragic accident entirely avoided, if the police had simply ceased their pursuit? We think the police need not have taken that chance and hoped for the best. Whereas Scott's action - ramming respondent off the road - was *certain* to eliminate the risk that respondent posed to the public, ceasing pursuit was not. First of all, there would have been no way to convey convincingly to respondent that the chase was off, and that he was free to go. Had respondent looked in his rearview mirror and seen the police cars deactivate their flashing lights and turn around, he would have had no idea whether they were truly letting him get away, or simply devising a new strategy for capture. . . . Given such uncertainty, respondent might have been just as likely to respond by continuing to drive recklessly as by slowing down and wiping his brow.

Id. at 385. The Supreme Court continued: "[W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger." Id. Likewise in the instant case, Deputy Hall had no guarantee that ceasing his pursuit would cause the decedent to slow down and drive safely into the rapidly upcoming traffic.

Finally, the inquiry in considering Deputy Hall's claim of qualified immunity is not whether there was a more reasonable

14

alternative to the use of deadly force.[9] The inquiry is whether his actual conduct was objectively reasonable.[10] Thus, the Court asks "whether a reasonable officer would believe" that the level of force used to stop the suspect was "necessary in the situation at hand." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (quoting Willingham v. Loughnan, 261 F.3d 1178, 1186 (11th Cir. 2001)). Importantly, reasonableness is adjudged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

Here, the undisputed evidence shows that Deputy Hall had an objectively reasonable belief that the decedent, who was obviously intent on eluding capture, posed a risk of serious harm to the motoring public and the pursuing officer. At the time Deputy Hall opted to utilize the PIT maneuver, the decedent had already passed 17 unsuspecting motorists in a reckless manner such that any wrong move on any one driver's part could have caused an accident of tragic consequences.

---

[9] "Reconsideration will nearly always reveal that something different could have been done if the officer knew the future before it occurred." Menuel v. City of Atlanta, 25 F.3d 990, 997 (11th Cir. 1994) (quoted source omitted).

[10] The Scott Court explained that there is no "magical on/off switch that triggers rigid preconditions" if the use of force is deadly. 550 U.S. at 382. Rather, whether the use of force is deadly or not, all the matters is whether the officer's conduct was reasonable. Id. at 383.

The facts of this case are quite similar to the facts of the Scott case. In Scott, officers pursued a speeding and reckless motorist for ten miles before one officer terminated the high-speed chase by applying his bumper to the rear of the speeding motorist's vehicle, causing it to crash. The speeding motorist was rendered a quadriplegic from his injuries. The Supreme Court held: "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." Id. at 386; accord Beshers v. Harrison, 495 F.3d 1260, 1268 (11th Cir. 2007) (finding no Fourth Amendment violation where, after observing a motorist weaving in and out of traffic, crossing the double yellow center line, driving on the wrong side of the road, and forcing others off the road, a police officer ended a 15-minute pursuit by clipping the rear corner of the motorist's truck, causing it to flip and kill the motorist); Long v. Slaton, 508 F.3d 576 (11th Cir. 2007) (holding that a sheriff's deputy did not violate the Fourth Amendment by fatally shooting a mentally unstable individual who was attempting to flee in the deputy's car, even though at the time of the shooting the individual had not yet operated the cruiser dangerously). The Scott holding makes the constitutionality of Deputy Hall's conduct unassailable. In

16

short, the decedent's reckless and high-speed driving through interstate traffic posed a substantial and immediate risk of harm to the motoring public. No reasonable jury could conclude otherwise. Thus, Deputy Hall's decision to terminate the chase utilizing the PIT maneuver was reasonable and did not violate the Fourth Amendment.

Plaintiffs have also failed to establish the second prong of qualified immunity. That is, Plaintiffs have failed to show that Deputy Hall's conduct violated clearly established law at the time of the incident. A right is clearly established for purposes of qualified immunity when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (quoted source omitted). "Unless a government agent's act is so obviously wrong, in light of pre-existing law, that only a plainly incompetent officer or one who has knowingly violated the law would have done such a thing, the government actor has immunity from suit." Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994).

In this case, Plaintiffs generally state that "it is clearly established that the government must have some interest in using deadly force over other kinds of police activity or tactics." (Pls.' Resp. in Opp'n at 8.) Yet, they provide no case law in

17

support of this proposition. Plaintiffs also state, without case law, that the "use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." (Id. at 14.) As discussed supra, the notion that *deadly* force somehow triggers a more rigid standard than objective reasonableness was explicitly rejected by the Scott Court.

Importantly, at the time of the subject incident in March 2019, the United States Supreme Court had announced that it has "never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity." Mullenix, 577 U.S. at 15. The Mullenix Court also emphasized that clearly established law cannot be defined at a high level of generality. Id. at 12. Rather, district courts must look at the particular conduct in the case; "specificity is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." Id.; quoted in Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 8 (2021).

Indeed, even after the subject incident, the Eleventh Circuit upheld the grant of qualified immunity to an officer who shot a speeding motorcyclist because the plaintiff could not cite clearly established law that would have given the officer fair warning

that his use of deadly force to end the high-speed chase was excessive or otherwise unreasonable. See Schantz v. DeLoach, 2021 WL 4977514, at *10 (11th Cir. Oct. 26, 2021) ("It is thus apparent, based on Mullenix, that no Supreme Court authority could have put Defendant on notice that his use of deadly force against Plaintiff under the circumstances of this case violated the Fourth Amendment.").

Upon the foregoing, the Court readily concludes that Plaintiffs have not shown that Deputy Hall's use of force violated clearly established law.

B. Sheriff Dean's Qualified Immunity

In Count Five of their complaint, Plaintiffs allege that Sheriff Dean was deliberately indifferent to the Fourth Amendment violations of pursued drivers by his implementation and training of his deputies to employ the PIT maneuver at extreme speeds. That is, Plaintiffs allege that Sheriff Dean's policies led to Deputy Hall's conduct. Because Plaintiffs have failed to demonstrate that Deputy Hall's use of the PIT maneuver violated the Fourth Amendment, however, they cannot prevail against Sheriff Dean. See, e.g., Case v. Eslinger, 555 F.3d 1317, 1328 (11th Cir. 2009) (concluding that the Sheriff was entitled to summary judgment in the absence of a constitutional violation by his officer). Accordingly, Sheriff Dean is entitled to qualified immunity since

Plaintiffs cannot establish that he violated the decedent's constitutional rights.

## IV. CONCLUSION

For the reasons stated, Defendants' motions for summary judgment as to Plaintiffs' federal claims (doc. nos. 46 & 47) are **GRANTED**. The Court declines to exercise jurisdiction over Plaintiffs' state law claims[11]; thus, they are **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of all Defendants and **CLOSE** this case. Costs are taxed against Plaintiffs.

**ORDER ENTERED** at Augusta, Georgia, this 16 day of May, 2023.

_____
UNITED STATES DISTRICT JUDGE

---

[11] Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims under which it has original jurisdiction.